# THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                                                    SUPERIOR COURT

Lewis B. Sykes, Jr.

    Plaintiff

v.

RBS Citizens, N.A.                                                Docket Number: _____
Bank of America, N.A.
Bank of New York Mellon
CCO Mortgage Corporation
Federal National Mortgage Association
Citibank, N.A.

    Defendants

## VERIFIED COMPLAINT

NOW COMES the Plaintiff, Lewis B. Sykes, Jr., and complains as follows:

### STATEMENT OF THE PARTIES

1. The Plaintiff, Lewis B. Sykes, Jr., is a natural person who resides at 482 Winnacunnet Road, Hampton, New Hampshire, 03842.

2. Defendant RBS Citizens, N.A. (hereinafter referred to as "RBS Citizens") is a national banking association with an address of One Citizens Plaza, Providence, RI 02903.

3. Defendant Bank of America, N.A. (hereinafter referred to as "Bank of America"), is a national banking association. The address of Bank of America's headquarters is 100 North Tryon Street, Charlotte, North Carolina 28202.

4. Defendant Bank of New York Mellon (hereinafter referred to as "BNY Mellon"), is a national banking corporation. The address of BNY Mellon's headquarters is 1 Wall Street, New York, NY 10005.

5. Defendant CCO Mortgage Corporation (hereinafter referred to as "CCO Mortgage") is a corporation with an address of 10561 Telegraph Road, Glen Allen, VA 23059. CCO Mortgage is a division of Defendant RBS Citizens.

6. Defendant Federal National Mortgage Association (hereinafter referred to as "Fannie Mae") is government sponsored public company with an address of P.O. Box 650043, Dallas, TX 75265.

7. Defendant Citibank, N.A. (hereinafter referred to as Citibank) is a national banking association. The address of Citibank's headquarters is 399 Park Avenue, New York, NY 10043.

## JURISDICTION AND VENUE

8. The Plaintiff's claims in this action arise from unlawful acts committed by the Defendants in the course of doing business in New Hampshire, so that this Court has jurisdiction over all of the Defendants pursuant to RSA 510:4 (I).

9. As the Plaintiff resides in this county, venue is proper in this Court pursuant to RSA 507:9.

## FACTS

10. The Plaintiff and his mother Dorothy W. Sykes owned the property located at 1047 Banfield Road in Portsmouth, New Hampshire (hereinafter referred to as "the homestead").

11. On August 31, 2005, Plaintiff and Dorothy W. Sykes entered into a mortgage loan number 0019085968 with CCO Mortgage in the amount of $225,000.

12. The loan from CCO Mortgage was secured by a mortgage on the homestead to CCO Mortgage, which was recorded in the Rockingham County Registry of Deeds on September 7, 2005.

13. In November of 2008, Plaintiff received a mortgage bill with an unexplained additional amount of $400.

14. Plaintiff contacted Defendant CCO Mortgage in November and December of 2008 and January of 2009 to find out why the additional $400 charge was added to the mortgage bill, and stopped paying the mortgage.

15. At no time after December of 2008, did Defendants provide Plaintiff with monthly billing statement.

16. Defendant CCO Mortgage sent a letter to Plaintiff dated January 6, 2008 [sic], in response to Plaintiff's January of 2009, correspondence.

17. Defendant CCO Mortgage never resolved the issue of the additional $400 charge.

18. Defendant CCO Mortgage sent Plaintiff an annual escrow account disclosure statement dated September 23, 2009.

19. Between January 6, 2009, and September 23, 2009, Defendants failed to send to Plaintiff any documents whatsoever.

20. Upon information and belief, CCO Mortgage assigned the mortgage to Federal National Mortgage Association on July 30, 2009.

21. Defendants never sent a notice of default to the Plaintiff.

22. Defendants never sent a notice of acceleration to the Plaintiff.

23. Defendants never sent a notice of foreclosure to the Plaintiff.

24. On October 2, 2009, Plaintiff was mowing the lawn at the homestead when he noticed several cars parked at the end of his driveway and half a dozen people standing around.

25. Plaintiff went to find out why the cars and people were there.

26. Plaintiff was told by the person in charge that he was running an auction on the Plaintiff's house.

27. The Auctioneer told the Plaintiff that "it was not the end of the road" because he could still "work it out" with the Defendants.

28. Upon information and belief, the homestead was sold at a foreclosure auction on October 2, 2009.

29. On October 23, 2009, Defendants' representative Robert Kelly delivered a "cash for keys" written proposal to the Plaintiff.

30. Plaintiff refused the proposal because he was not able to move out within the time period requested in the proposal.

31. In the evening of November 2, 2009, Defendants left an undated eviction notice at the Plaintiff's home door.

32. In late November of 2009, Defendants' representative Robert Kelly caused the utilities to be shut off at the homestead.

33. As a result of the utility stoppage, no heat existed at the homestead.

34. Defendants' shutting off the utilities caused the pipes to freeze and burst causing damage to Plaintiff's personal property.

35. Plaintiff vacated the homestead on November 25, 2009.

36. Defendants did not serve a landlord tenant writ or writ of possession on the Plaintiff.

37. Plaintiff was not served and was not aware that there was a possessory action started in Portsmouth District Court in December of 2009.

38. Under ¶ 22 of the mortgage contract between Plaintiff and CCO Mortgage, Defendants were obligated to give notice to Plaintiff regarding the breach of the contract informing the Plaintiff about his rights.

39. Under ¶ 22 of the mortgage contract between Plaintiff and CCO Mortgage, Defendants were obligated to give notice to Plaintiff regarding the auction of the homestead in compliance with the New Hampshire law.

40. Defendants breached the contract by failing to provide the notice of default, notice of acceleration and notice of auction.

41. Plaintiff for the first time received the following on April 25, 2011, from the Bank of America:

    i. Notice of default;
    ii. Notice of acceleration;
    iii. Notice of foreclosure.

42. The notice of default was dated December 8, 2008.

43. On December 8, 2008, Plaintiff was only approximately 21 days late on his payment.

44. Upon information and belief, Bank of America, did not hold the mortgage in December of 2008.

45. Plaintiff did not and could not have discovered the following until April of 2011:

    i. Notice of default;
    ii. Notice of acceleration;
    iii. Notice of foreclosure.

46. Until April of 2011, Plaintiff did not know why the homestead was foreclosed and until then was not aware of his rights enumerated in the notice of the default.

47. Upon information and belief, the homestead was sold to a third party on May 27, 2010.

48. Because Plaintiff did not receive notices of default, acceleration, foreclosure, or writ of possession, Plaintiff did not know and could not have known until, at the earliest, May 27, 2010, that he no longer had a possessory interest in the homestead.

49. Defendants fraudulently concealed the facts of default, acceleration and foreclosure by failing to inform the Plaintiff.

50. Plaintiff did not find out the reason for the foreclosure until April of 2011 when he received the notices of default, acceleration and foreclosure auction from defendant Bank of America.

51. As a result of the fraudulent concealment, Plaintiff did not discover the facts essential to the cause of action until April of 2011.

## COUNT I

## BREACH OF CONTRACT

52. The Plaintiff repeats and realleges the allegations of Paragraphs 1 through 51 herein.

53. Defendants breached the contract between Plaintiff and CCO Mortgage by not providing Plaintiff with the notice of default, notice of acceleration and notice of foreclosure sale.

54. Because Defendants did not send said notices, Plaintiff was not informed that he was in default, that his loan was accelerated and that the homestead was going to be sold at a foreclosure auction.

55. Because Defendants did not inform the Plaintiff, he did not know about his rights to petition the court to assert non-existence of default and, therefore, Plaintiff was deprived on an opportunity to assert his rights.

56. Because Defendants did not inform the Plaintiff, he did not know about his rights to cure the default and reinstate the loan, and therefore, Plaintiff was deprived of his rights to cure and reinstate.

57. Because Defendants did not inform the Plaintiff, he did not know about his right to petition the court to enjoin the foreclosure, and, therefore, Plaintiff was deprived of his rights to enjoin the foreclosure.

58. At the time of signing of the contract, it was foreseeable that failure to give notices to Plaintiff that this account was in default, was accelerated, and his homestead was to be foreclosed could result in loss of equity in the homestead, loss of homestead exemption, loss of personal property, extreme anguish and emotional distress.

59. As a result of Defendants' breach of contract, Plaintiff did suffer loss of equity in the homestead, loss of homestead exemption, loss of personal property, extreme anguish and emotional distress.

## COUNT II

## WRONGFUL FORECLOSURE

60. The Plaintiff repeats and realleges the allegations of Paragraphs 1 through 59 herein.

61. NH RSA 479:25 specifies that notice of a foreclosure must be served on or mailed to the mortgagor at least 25 days prior to a foreclosure auction and that "such notice of sale shall be sufficient if it fully sets forth the date, time, and place of sale; the town, county, street or highway and street number, if any, of the mortgaged premises; the date of the mortgage; the volume and page of the recording of the mortgage; and the terms of the sale."

62. Defendants did not mail the notice of the foreclosure auction to Plaintiff in the manner required by New Hampshire law.

63. Defendants failed to notify Plaintiff of the date, time or place of the foreclosure auction on his property, which took place in October of 2009.

64. Upon information and belief, the Plaintiff's home has been sold by the defendants to another person or persons causing the Plaintiff to suffer extreme anxiety, financial loss, deprivation of a unique asset, and embarrassment.

## COUNT III

## WRONGFUL EVICTION

65. The Plaintiff repeats and realleges the allegations of Paragraphs 1 through 64 herein.

66. After the foreclosure auction, the Plaintiff became a tenant at sufferance.

67. Under New Hampshire law, landlords are expressly forbidden to use "self help" to evict tenants at sufferance.

68. Shutting off the utilities by Defendants caused Plaintiff's homestead to be uninhabitable and constituted constructive eviction.

69. Shutting off the utilities by Defendants caused the pipes to freeze and burst causing water damage to Plaintiff's personal property.

70. As a result of the wrongful constructive eviction, Plaintiff was not served and was not aware that a landlord/tenant action was brought in Portsmouth District Court in December of 2009.

71. Plaintiff was deprived of the opportunity to challenge the wrongful eviction because he was never notified of the suit in Portsmouth District Court.

72. As a result of the wrongful eviction, Plaintiff suffered damage to his personal property, financial loss and extreme anxiety.

## COUNT IV

## VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT ("RESPA")

73. The Plaintiff repeats and realleges the allegations of Paragraphs 1 through 72 herein.

74. RESPA requires that once the servicer of a mortgage loan receives a qualified written request from the borrower, the servicer must acknowledge the receipt of the correspondence and no later than 30 days after the receipt, servicer must

make appropriate corrections in the borrower's account or explain to the borrower why the servicer believes the account to be correct. U.S.C.A. § 2605(e).

75. Plaintiff sent qualified written requests in November and December of 2008, as well as January of 2009 asking for an explanation for the additional $400 charge.

76. Defendant CCO Mortgage sent a letter to Plaintiff dated January 6, 2008 [sic], in response to Plaintiff's January of 2009, correspondence.

77. In that letter, Defendant CCO Mortgage failed to explain the additional $400 charge and failed to correct Plaintiff's account in violation of RESPA.

78. Defendants never explained the $400 charge or corrected the Plaintiff's account.

79. At the time of the foreclosure sale in October of 2009, Plaintiff was still trying to have the issue of the $400 charge resolved.

80. Because of the Defendants' failure to explain the additional charges or correct Plaintiff's account, he suffered financial loss and emotional distress.

## COUNT V

## CIVIL CONSPIRACY

81. The Plaintiff repeats and realleges the allegations of Paragraphs 1 through 80 herein.

82. Plaintiff had contacted Defendants to find out why there was a charge of $400 added to his bill.

83. Defendants did not resolve the issue of the $400 charge.

10

84. As of October 2, 2009, Plaintiff was still trying to resolve the $400 issue and had had no notices that his account was in default, that the loan was accelerated and that the homestead was going to be auctioned.

85. Defendants did not inform the Plaintiff that his mortgage has been assigned from CCO Mortgage to Federal National Mortgage Association in July of 2009.

86. CCO Mortgage sent Plaintiff an annual escrow account disclosure statement dated September 23, 2009, fraudulently misrepresenting to the Plaintiff that CCO Mortgage still owned the mortgage at that time.

87. RBS Citizens sent Plaintiff a letter dated September 28, 2009, offering to modify his loan and fraudulently misrepresenting to the Plaintiff that CCO Mortgage still owned the mortgage at that time.

88. Defendants CCO Mortgage, RBS Citizens and Federal National Mortgage Association concealed information from Plaintiff about the status of the loan and his legal rights and fraudulently misrepresented the ownership of the mortgage.

89. As a result of Defendants' civil conspiracy to commit fraud, Plaintiff suffered damages of loss of equity in the homestead, loss of homestead exemption, loss of personal property, extreme anguish and emotional distress.

WHEREFORE, the Plaintiff, Lewis B. Sykes, Jr., having set forth his claims for relief against the Defendants, respectfully prays:

A. That the Court finds breach of contract and awards damages to Plaintiff;

B. That the Court finds wrongful foreclosure and awards damages to Plaintiff;

C. That the Court finds wrongful eviction and awards damages to Plaintiff;

D. That the Court finds violations of RESPA and awards to Plaintiff:

    a. Actual damages under 12 U.S.C.A. § 2605(f)(1)(A) including but not limited to lost equity in the home and loss of homestead exemption;

    b. Additional damages under 12 U.S.C.A. § 2605(f)(1)(B) for pattern and practice of noncompliance;

    c. Costs of the action and attorneys fees under 12 U.S.C.A. § 2605(f)(3);

E. That the Court finds civil conspiracy and awards damages to Plaintiff;

F. That the Plaintiff has and recovers judgment against the Defendants for damages of loss of equity in the homestead, loss of homestead exemption, loss of personal property, extreme anguish and emotional distress, attorney fees and costs;

G. That the Court grant such other and further relief as may be just and proper.

Respectfully submitted,

Dated: 5/24/13

By: _____
LEWIS B. SYKES, JR.

By and through his attorneys,

**HARMAN LAW OFFICES**

Date: 5/24/13

By: _____
Terrie Harman, NHB#1096
59 Deer Street, Suite 1B
Portsmouth, NH 03801
(603) 431-0666

12

STATE OF NEW HAMPSHIRE
COUNTY OF ROCKINGHAM, SS.

Personally appeared the above named, Lewis B. Sykes, Jr., and acknowledged the foregoing to be true to the best of her knowledge and belief before me this 24th day of May, 2013.

_____
Notary Public/Justice of Peace

[Notary Seal: THOMAS D. McCARRON, MY COMMISSION EXPIRES FEB. 9, 2015, NOTARY PUBLIC, NEW HAMPSHIRE]

Terrie Harman

7008 1300 0001 6043 4719

U.S. POSTAGE PAID
KITTERY, ME
03904
JUN 20, 13
AMOUNT
$6.97
00094915-05

28202

1000

Secretary
Bank of America, N.A.
100 North Tryon Street
Charlotte, North Carolina 28202

This Package has been X-RAYED

LEGAL ORDER PROCESSING
MSC: NY7-501-0116
RTE: 70

CARR: USPS
TRK#: 70081300000160434719
RCVD: 06/26/2013

TO: LEGAL ORDER PROCESSING
PH:
BDG: NY7-501  FLR:



English     Customer Service     USPS Mobile     Register / Sign In



Search USPS.com or Track Packages

**Quick Tools**
Track & Confirm
Enter up to 10 Tracking # [Find]
Find USPS Locations
Buy Stamps
Schedule a Pickup
Calculate a Price
Find a ZIP Code™
Hold Mail
Change of Address

Ship a Package    Send Mail    Manage Your Mail    Shop    Business Solutions

### Track & Confirm

[GET EMAIL UPDATES] [PRINT DETAILS]

| YOUR LABEL NUMBER | SERVICE | STATUS OF YOUR ITEM | DATE & TIME | LOCATION | FEATURES |
|---|---|---|---|---|---|
| 70081300000160434719 | First-Class Mail® | Delivered | June 26, 2013, 12:11 pm | CHARLOTTE, NC 28204 | **Expected Delivery By:** June 24, 2013<br>Certified Mail™<br>Return Receipt |
| | | Available for Pickup | June 26, 2013, 11:08 am | CHARLOTTE, NC 28202 | |
| | | Arrival at Unit | June 26, 2013, 9:35 am | CHARLOTTE, NC 28204 | |
| | | Processed through USPS Sort Facility | June 24, 2013, 3:26 pm | CHARLOTTE, NC 28228 | |
| | | Depart USPS Sort Facility | June 24, 2013 | CHARLOTTE, NC 28214 | |
| | | Processed through USPS Sort Facility | June 24, 2013, 2:20 am | CHARLOTTE, NC 28214 | |
| | | Depart USPS Sort Facility | June 24, 2013 | CHARLOTTE, NC 28228 | |
| | | Processed through USPS Sort Facility | June 23, 2013, 5:52 am | CHARLOTTE, NC 28228 | |
| | | Depart USPS Sort Facility | June 20, 2013 | SCARBOROUGH, ME 04074 | |
| | | Processed at USPS Origin Sort Facility | June 20, 2013, 8:34 pm | SCARBOROUGH, ME 04074 | |
| | | Dispatched to Sort Facility | June 20, 2013, 5:16 pm | KITTERY, ME 03904 | |
| | | Acceptance | June 20, 2013, 9:45 am | KITTERY, ME 03904 | |

**Check on Another Item**
What's your label (or receipt) number?



| LEGAL | ON USPS.COM | ON ABOUT.USPS.COM | OTHER USPS SITES |
|---|---|---|---|
| Privacy Policy › | Government Services › | About USPS Home › | Business Customer Gateway › |
| Terms of Use › | Buy Stamps & Shop › | Newsroom › | Postal Inspectors › |
| FOIA › | Print a Label with Postage › | Mail Service Updates › | Inspector General › |
| No FEAR Act EEO Data › | Customer Service › | Forms & Publications › | Postal Explorer › |
| | Delivering Solutions to the Last Mile › | Careers › | |
| | Site Index › | | |

Copyright© 2013 USPS. All Rights Reserved.