UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE

<u>Lewis B. Sykes, Jr.</u>

     v.                               Civil No. 1:13-cv-334-JD
                                          Opinion No. 2014 DNH 045
<u>RBS Citizens, N.A. et al.</u>

O R D E R

Lewis B. Sykes, Jr. brought suit in state court against RBS
Citizens, N.A.("RBS"); CCO Mortgage Corporation ("CCO"); Federal
National Mortgage Association ("FNMA"); Bank of America, N.A.
("Bank of America"); Bank of New York Mellon ("BNYM"); and
Citibank, N.A. ("Citibank"), alleging claims arising from the
defendants' involvement in the foreclosure of his home.  Bank of
America removed the case to this court, and the defendants, other
than Citibank, moved to dismiss the complaint.

In response, Sykes moved for leave to amend his complaint to
add factual allegations and to add claims for violation of the
Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq.,[1] fraud,
breach of the implied covenant of good faith and fair dealing,
and conversion.  RBS, CCO, and FNMA (collectively, "mortgage
defendants") filed an objection, and Bank of America and BNYM
(collectively, "bank defendants") filed a separate objection.[2]

---

[1]Sykes's proposed TILA claim is based on the defendants'
alleged violation of 15 U.S.C. § 1641, which was added to TILA in
2009.  <u>See</u> Helping Families Save Their Homes Act of 2009, Pub.L.
No. 111-22 § 404, 123 Stat. 1632, 1658.

[2]Default was entered against Citibank on January 6, 2014.

Both objections argue that granting Sykes leave to amend the complaint would be futile.[3]

Sykes moved for leave to file replies.  The bank defendants filed an objection.  Sykes's motions for leave to file replies (document nos. 34 & 35) are granted,[4] and the replies have been considered in deciding the motion for leave to amend.[5]

---

[3]Although this is the first time Sykes has sought to amend his complaint, the motion for leave to amend was filed more than twenty-one days after the defendants filed their motions to dismiss the original complaint.  Therefore, Sykes was not entitled to amend the complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1), and he was required to obtain the defendants' consent or the court's leave to file an amended complaint under Rule 15(a)(2).

[4]In their objection, the bank defendants request permission to file a surreply if the court grants Sykes's motion for leave to file a reply.  "[L]eave to file a surreply will only be granted under extraordinary circumstances."  LR 7.1(e)(3).  Such extraordinary circumstances are not present here.  Therefore, the bank defendants are not permitted to file a surreply.

[5]Sykes argues in his reply to the mortgage defendants' objection that the objection, which was filed on January 31, 2014, should not be considered because it was filed more than fourteen days after Sykes filed his motion for leave to file an amended complaint on January 14, 2014.  See LR 7.1(b).  Sykes's argument fails to factor in the additional three days allowed under Federal Rule of Civil Procedure 6(d) (providing for three additional days after a period would otherwise expire when service is effectuated, as here, by Federal Rule of Civil Procedure 5(b)(2)(E)).  Even if the mortgage defendants' objection were untimely, the court would consider the objection in the interests of justice.  See LR 1.3(b) ("The court may excuse a failure to comply with any local rule whenever justice so requires.").

Standard of Review

Under Federal Rule of Civil Procedure 15(a)(2), "[t]he court should freely give leave [to amend the complaint] when justice so requires."  The liberal standard under Rule 15(a)(2) does not mean that all requests to amend will be granted.  Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 61 (1st Cir. 2013). Instead, "a district court may deny leave to amend when the request is characterized by undue delay, bad faith, futility, or the absence of due diligence on the movant's part."  Nikitine v. Wilmington Tr. Co., 715 F.3d 388, 390 (1st Cir. 2013).

A proposed amendment to a complaint is futile if, as amended, "the complaint still fails to state a claim."  Abraham v. Woods Hole Oceanographic Inst., 553 F.3d 114, 117 (1st Cir. 2009).  Therefore, review for futility is identical to review under Federal Rule of Civil Procedure 12(b)(6).  Edlow v. RBW, LLC, 688 F.3d 26, 40 (1st Cir. 2012).

For purposes of a motion to dismiss, the court "separate[s] the factual allegations from the conclusory statements in order to analyze whether the former, if taken as true, set forth a plausible, not merely conceivable, case for relief."  Juarez v. Select Portfolio Servicing, Inc., 708 F.3d 269, 276 (1st Cir. 2013) (internal quotation marks omitted).  "If the facts alleged in [the complaint] allow the court to draw the reasonable inference that the defendants are liable for the misconduct alleged, the claim has facial plausibility."  Id. (internal quotation marks omitted).

3

Background

On August 31, 2005, Lewis Sykes and his mother, Dorothy W. Sykes, entered into a loan with CCO for $225,000.  The loan was secured by a mortgage on Lewis and Dorothy's home at 1047 Banfield Road in Portsmouth, New Hampshire.  At some point thereafter, Lewis entered into a loan with Bank of America, which was secured by a second mortgage on the home.

In November and December of 2008, Lewis Sykes received mortgage bills with a $400 charge in addition to his required monthly mortgage payment.  Sykes sent CCO several letters over the next few months to ask why he was charged an additional $400, but he did not receive an explanation.  Sykes alleges that because CCO failed to explain the additional $400 charge, he stopped making his monthly mortgage payments.[6]  He also alleges that he did not receive a monthly billing statement after December of 2008.

CCO eventually responded to Sykes's inquiries via letter on January 6, 2009,[5] but the letter either did not address or did not resolve to Sykes's satisfaction the nature of the $400 charge.  Sykes alleges that CCO "never explained nor resolved the

---

[6]Although the proposed amended complaint ("amended complaint") does not specify when Sykes stopped making his monthly mortgage payments, Sykes alleges that he was twenty-one days late on his payment as of December 8, 2008.  See Pr. Am. Compl. ("Compl.") ¶ 92.

[5]Sykes alleges that the letter was dated January 6, 2008, but he suggests that the incorrect year was a typographical error.

issue of the additional $400 charge."  Compl. ¶ 22.  Sykes "made multiple requests for information about his mortgage" over the next several months after receiving CCO's letter, but did not receive any response.  Id. ¶ 42.

Although Sykes was unaware of it at the time, CCO assigned the mortgage to FNMA on July 30, 2009.  Despite this assignment, Sykes claims that he received two documents after that date which led him to believe that CCO still held the mortgage.  The first was an annual escrow account disclosure statement from CCO dated September 23, 2009.  The second was a letter dated September 28, 2009, from RBS offering to modify Sykes's loan and informing him that a foreclosure sale would be conducted on October 2, 2009.[6] Sykes interpreted the second letter to represent that CCO was the owner of the mortgage.[7]

On October 2, 2009, Sykes, while mowing the lawn at his home, noticed several people and cars parked at the end of the driveway.  Sykes approached the group and learned that his home was being sold at a foreclosure auction that day.  BNYM purchased Sykes's home at the auction but, as discussed below, Sykes was led to believe that Bank of America, and not BNYM, purchased the

---

[6]Sykes alleges that he did not receive the letter until after October 2, 2009.

[7]The letter stated: "I have spoken with a Senior Associate from CCO Mortgage and I have been informed that we are proceeding with foreclosure accordingly.  A sale date has been set for October 2, 2009 at 3pm.  If you would like to be considered for a loan modification please complete the attached financial borrower statement."  Compl. ¶ 43.

home.  Sykes alleges that he "learned by observing the auction that CCO [] was the seller" of the property at the auction, but that the foreclosure deed lists FNMA as the seller.  Compl. ¶ 50; see id. ¶ 54.

In October of 2009, Robert Kelley, a real estate broker working on behalf of Bank of America, delivered a "cash for keys" written proposal to Sykes.  Compl. ¶ 58.  The proposal stated that "BAC Home Loans Servicing, LP, a subsidiary of Bank of America, N.A. acquired [Sykes's home] through foreclosure sale and subsequent Trustee's Deed."  Id.  Sykes rejected the proposal because it required him to move out of the home by a certain date and he did not believe he would be able to move out in time.  Sykes contacted Bank of America several times after that date to try to repurchase or rent the home, but Bank of America did not respond.

On November 2, 2009, one or more of the defendants left an undated eviction notice on Sykes's front door.  The eviction notice listed the evicting entity as "Bank NY Mellon f/k/a The Bank of New York, As Trustee for CWHEQ Revolving Home Equity Loan Trust, Series 2007-C of 10561 Telegraph Road, Glen Allen, VA 23059."  Compl. ¶ 61.  Sykes alleges that the address on the eviction notice is the address of CCO Mortgage.  Sykes asked Kelley why the eviction notice listed BNYM, and not Bank of America, as the owner of the property, and Kelley explained that it was a clerical error.

In late November of 2009, Kelley caused the utilities at the home to be shut off.  The lack of heat in the home caused the pipes to freeze and burst, damaging the home and Sykes's property.  Sykes vacated the home on November 25, 2009.

BNYM instituted a possessory action in Portsmouth District Court in December of 2009 ("possessory action").  Sykes was not aware of the possessory action until April of 2011 because notice of the action was left on the door of the home he had vacated in November.  The district court issued a landlord-tenant writ to BNYM in December of 2009 and a writ of possession to Citibank on January 22, 2010.  The home was sold to a third party on May 27, 2010.

On April 25, 2011, after Sykes had filed a complaint against Bank of America with the Office of the Comptroller of the Currency, Sykes received from Bank of America notices of default, acceleration, and foreclosure; the foreclosure deed; the landlord-tenant writ; and the writ of possession.  The notice of default was dated December 8, 2008, a date on which CCO held the mortgage.  Sykes alleges that until he received these notices, he did not know the reasons for the foreclosure and had not been informed of his rights provided in the notice of default.

Sykes alleges that after his eviction, he was unable "to find housing which could accommodate his equipment and tools necessary to continue his employment . . . ."  Compl. ¶ 105.  He also alleges that the foreclosure and eviction negatively impacted his mental health, and that he was diagnosed with

depression, anxiety, and post traumatic stress disorder in the summer of 2010.  Sykes alleges that because of his mental health issues, "he did not and could not assert his legal rights and bring legal action against responsible parties, many of whom were still unknown," until now.  Id. ¶ 109.

## Discussion

In the original complaint, Sykes alleged claims for breach of contract (Count I); wrongful foreclosure (Count II); wrongful eviction (Count III); violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq., ("RESPA") (Count IV); and civil conspiracy (Count V).  The mortgage defendants and the bank defendants moved to dismiss the original complaint.

Sykes seeks to amend his complaint to add claims for violation of TILA, 15 U.S.C. § 1641 (Count V)[8]; fraud (Count VII); breach of the implied covenant of good faith and fair dealing (Count VIII); and conversion (Count IX).  Sykes contends that granting him leave to amend the complaint will not prejudice the defendants or result in any delay because discovery has not yet commenced.

## I.   Mortgage Defendants

The mortgage defendants object to Sykes's motion for leave to amend, arguing that all the claims in the amended complaint

---

[8]In the amended complaint, Sykes's civil conspiracy claim is Count VI.

should be dismissed and, therefore, amendment would be futile. In support, the mortgage defendants argue that Sykes's claims for wrongful eviction, fraud, and conversion are alleged against the bank defendants and/or Citibank only.  They also contend that Sykes's claims for breach of contract, wrongful foreclosure, civil conspiracy, and breach of the implied covenant of good faith and fair dealing fail because Sykes does not allege facts to support those claims.  They further argue that all the claims alleged against them are time-barred under the statutes of limitations applicable to each claim.

In his reply to the mortgage defendants' objection, Sykes argues that he has sufficiently alleged claims for breach of contract, wrongful foreclosure, civil conspiracy, and breach of the implied covenant of good faith and fair dealing against the mortgage defendants.  He also contends that none of his claims against the mortgage defendants is time-barred because he did not become aware of their wrongful conduct until shortly before he filed suit.  He further contends that even if his claims would otherwise be time-barred, the statutes of limitations should be tolled because (i) the mortgage defendants fraudulently concealed information necessary for Sykes to bring his claim and (ii) he was mentally incompetent due to the shock of losing his home.

A.   Claims Not Alleged Against Mortgage Defendants

The mortgage defendants contend that the amended complaint does not allege their involvement in the claims for wrongful

eviction (Count III), fraud (Count VII), or conversion (Count IX).  Sykes's reply to the mortgage defendants' objection did not address the arguments concerning those claims.

Sykes's claims for wrongful eviction and conversion allege wrongful conduct by the bank defendants and Citibank.  <u>See</u> Compl. ¶¶ 135-146 & 210-215.  The claim for fraud alleges wrongful conduct by Bank of America.  <u>Id.</u> ¶¶ 195-204.  None of these claims is directed against the mortgage defendants.  Therefore, the amended complaint does not state claims for wrongful eviction, fraud, or conversion against the mortgage defendants.

B.   <u>Merits</u>

The mortgage defendants argue that the amended complaint fails to state claims for breach of contract (Count I), wrongful foreclosure (Count II), civil conspiracy (Count VI), and breach of the implied covenant of good faith and fair dealing (Count VIII) against them.[9]  Sykes contends in his reply that he has sufficiently pled these claims.

---

[9]The mortgage defendants also briefly argue that Sykes's RESPA claim is "vague as pled."  To the extent the mortgage defendants intended to argue that Sykes's RESPA claim against them is futile on the grounds of vagueness, that argument was not sufficiently developed to be addressed.  <u>See</u> <u>Higgins v. New Balance Athletic Shoes, Inc.</u>, 194 F.3d 252, 260 (1st Cir. 1999); <u>United States v. Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

1.  <u>Breach of Contract</u>

Sykes alleges that the mortgage defendants breached the mortgage agreement "by not providing [him] with the notice of default, notice of acceleration and notice of foreclosure sale" prior to foreclosing on his home as required by paragraph twenty-two of the mortgage agreement.  Compl. ¶ 113.  The mortgage defendants contend that they provided Sykes with the notice of default on December 8, 2008, the notice of acceleration on July 6, 2009, and the notice of foreclosure sale on September 2, 2009. They attach each letter as an exhibit to their objection.  They also attach as an exhibit a letter from Harmon Law Offices ("Harmon") dated October 2, 2009, referencing a conversation between Harmon and Sykes and stating that "copies of the original notice of sale letters send [sic] certified mail" were enclosed. Sykes maintains in his reply that he did not receive the notices in accordance with the provisions in the mortgage agreement, and contends that the mortgage defendants did not include certified mail return receipts in the exhibits to show that they sent the notices on the days they were dated.

Assuming without deciding that the court could consider the documents attached to the mortgage defendants' objection,[10] the

---

[10]"[E]xtrinsic material is, generally, not properly considered on a motion to amend.  As with a motion to dismiss under Fed. R. Civ. P. 12(b)(6), in making futility determinations, the court must limit itself to the allegations in the complaint, as well as to any documents attached to the complaint as exhibits or incorporated by reference."  <u>Max Impact, LLC v. Sherwood Group, Inc.</u>, 2012 WL 3831535, at *4 (S.D.N.Y. Aug. 16, 2012) (internal citations omitted); <u>see also</u> <u>Rivera v. Centro Medico de Turabo, Inc.</u>, 575 F.3d 10, 15 (1st Cir. 2009).

amended complaint states a breach of contract claim against the mortgage defendants for purposes of a futility analysis.  Sykes alleges that he received a notice of default dated December 8, 2008, and that he received a notice of acceleration and a notice of foreclosure.  He alleges, however, that he did not receive these notices until April of 2011, well after the foreclosure auction.  Although the notices may have been in compliance with paragraph twenty-two of the mortgage agreement had they been sent on the dates listed on the notices, the court cannot determine for purposes of a futility analysis whether the notices were sent or received on those dates.  Therefore, even if the court could consider the documents attached to the mortgage defendants' objection, those documents do not, by themselves, establish that the mortgage defendants complied with the mortgage agreement for purposes of a futility analysis.  Accordingly, the amended complaint states a claim for breach of contract against the mortgage defendants.

    2.   Wrongful Foreclosure

    Sykes's amended complaint alleges two bases for his wrongful foreclosure claim.  The first, titled "Deficient Notice," is that the mortgage defendants failed to provide Sykes with adequate notice in advance of the foreclosure auction under RSA 479:25. The second, titled "Invalid Assignment," is that the assignment of the mortgage from CCO to FNMA was invalid, and FNMA "cannot show that it possessed legal title to the mortgage [or] whether

it held the note or established that it serviced the loan at the time of the foreclosure."  Compl. ¶ 133.

  a. <u>Deficient notice</u>

  RSA 479:25 provides that a mortgagee who plans to proceed with a foreclosure sale must serve a copy of the notice of such sale upon the mortgagor at least twenty-five days before the sale.  <u>See</u> RSA 479:25,II.  The amended complaint alleges that the mortgage defendants failed to provide him with the required notice.

  The mortgage defendants do not address the merits of Sykes's deficient notice allegations in their objection.  To the extent the mortgage defendants intended to rely on the date of the notice of foreclosure attached as an exhibit to their objection to defeat the wrongful foreclosure claim, that argument is unavailing for the reasons discussed in the previous section.  Therefore, the amended complaint states a wrongful foreclosure claim based on deficient notice against the mortgage defendants.

  b. <u>Invalid assignment</u>

  The mortgage defendants argue that Sykes has not alleged any facts to support his belief that the assignment of the mortgage to FNMA is invalid.  They also argue that Sykes lacks standing to challenge the assignment, and that they do not need to hold the note in order to foreclose.  In addition, they contend that their alleged failure to provide Sykes with notice of the assignment does not render the foreclosure wrongful.

In response, Sykes argues that he does have standing to challenge the validity of the assignment of the mortgage. He also argues that the mortgage defendants' failure to inform him of the assignment renders the assignment "ineffective".

The New Hampshire Supreme Court has recognized a claim for wrongful foreclosure, brought after the foreclosure sale, where the foreclosing mortgagee did not exercise due diligence in conducting the mortgage sale and, as a result, did not get a fair price for the property. Murphy v. Fin. Dev. Corp., 126 N.H. 536, 541-45 (1985); see also DeLellis v. Burke, 134 N.H. 607, 612-13 (1991). The court is not aware of any New Hampshire case that recognizes a claim for wrongful foreclosure based on a theory of invalid assignment.

Even if Sykes's wrongful foreclosure claim based on an invalid assignment is considered on the merits of that theory, and even assuming without deciding that Sykes has standing to assert such a claim, he has still failed to state a viable claim because he does not allege any facts to support his theory that the assignment was invalid. Therefore, the amended complaint does not state a claim for wrongful foreclosure based on invalid assignment against the mortgage defendants.

### 3. Civil Conspiracy

Sykes alleges in the amended complaint that the mortgage defendants made several misrepresentations concerning the holder of the mortgage and that they did not provide him with information necessary to keep his home. The mortgage defendants

14

argue that Sykes has not alleged that they had a common plan to perpetrate fraud on Sykes or wrongly foreclose on his home.[11]

New Hampshire courts define civil conspiracy as "'a combination of two or more persons by concerted action to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by unlawful means.'" Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quoting 15A C.J.S. Conspiracy § 1(1), at 596 (1967)). The elements of a cause of action for civil conspiracy are "(1) two or more persons (including corporations); (2) an object to be accomplished (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful object to be achieved by unlawful means); (3) an agreement on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." Jay Edwards, 130 N.H. at 47 (emphasis omitted).

Sykes's civil conspiracy theory against the mortgage defendants is based on allegations that they agreed to hide from Sykes that FNMA had been assigned the mortgage on July 30, 2009. Sykes alleges that the mortgage defendants conspired to hide from him the true owner of the mortgage in order to prevent him from dealing with FNMA and avoiding the foreclosure.

Even if the mortgage defendants had agreed to hide the assignment of the mortgage as Sykes alleges, Sykes has not pled

---

[11]The amended complaint divides the civil conspiracy claim into two sets of allegations: the "Pre-Auction Civil Conspiracy" and the "Post-Auction Civil Conspiracy." The civil conspiracy claim against the mortgage defendants is alleged in the "Pre-Auction Civil Conspiracy" section. See Compl. ¶¶ 168-179.

15

facts necessary to state a claim for conspiracy because he has
failed to allege "damages as a proximate result" of the alleged
agreement.  Sykes alleges that he stopped making his mortgage
payments in November of 2008.  Sykes does not allege that he took
any steps to resolve the issues with his mortgage or to modify
his mortgage between July 30, 2009, the date on which FNMA was
assigned the mortgage, and October 2, 2009, the date of the
foreclosure sale.  In other words, even assuming that the
mortgage defendants conspired to make Sykes believe that CCO,
rather than FNMA, still held the mortgage after July 30, 2009,
Sykes has not alleged that the foreclosure or eviction were
caused by his mistaken belief that CCO, and not FNMA, held the
mortgage after that date.  See Ingress v. Merrimack Mortg. Co.,
Inc., 2012 WL 405499, at *5 (D.N.H. Feb. 8, 2012) ("Ingress's
allegations do not show how, even if defendants had conspired to
deceive her about the date Wells Fargo became Trustee, such a
deception has proximately caused her to suffer damages . . . .
The foreclosure of the Wilton property was not caused by any
conspiracy to post-date assignment documents, but by Ingress's
failure to repay her mortgage.").

Accordingly, the amended complaint does not state a civil
conspiracy claim against the mortgage defendants.


4.   Implied Covenant of Good Faith and Fair Dealing

In the amended complaint, Sykes alleges that the mortgage
defendants "violated the implied covenant of good faith and fair
dealing by unreasonably failing to provide notices to the

16

Plaintiff about his mortgage loan, to respond to Plaintiff's requests for information, to fix errors in his mortgage bills, and by offering loan modification for the first time in a letter that did not reach Plaintiff until after the foreclosure auction."  Compl. ¶ 208.  The mortgage defendants argue that they provided Sykes with the notices of default, acceleration, and foreclosure that are attached to their objection and, therefore, did not breach the covenant.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another." Birch Broad. Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198 (2010).  As discussed above, the mortgage defendants' arguments concerning the notices are not sufficient to show that they complied with the provisions of the mortgage agreement.  The mortgage defendants make no other arguments as to the sufficiency of Sykes's claim for breach of the implied covenant of good faith and fair dealing against them.  Therefore, the amended complaint states such a claim.

Accordingly, the amended complaint states claims against the mortgage defendants for breach of contract (Count I), wrongful foreclosure based on deficient notice (Count II), and breach of the implied covenant of good faith and fair dealing (Count VIII). It does not state a claim against the mortgage defendants for wrongful foreclosure based on invalid assignment or for civil conspiracy (Count VI).

C.   <u>Statutes of Limitations</u>

The mortgage defendants argue that Sykes's claims for breach of contract (Count I) and breach of the implied covenant of good faith and fair dealing (Count VIII) against them are time-barred under RSA 508:4.[12]  They also argue that Sykes's claim for wrongful foreclosure (Count II) is time-barred under RSA 479:25. They further contend that Sykes's RESPA claim (Count IV) is time-barred under RESPA's limitations period contained in 12 U.S.C. § 2614, and that Sykes's TILA claim (Count V) is time-barred under § 1640(e).

In his reply to the mortgage defendants' objection, Sykes appears to concede that if the relevant date for purposes of the statutes of limitations for his various claims was the date of the mortgage defendants' wrongful conduct, his claims would be time-barred.  He argues, however, that he did not discover and should not have discovered the mortgage defendants' wrongful conduct until April of 2011 and, therefore, none of his claims is time-barred.  He further argues that the limitations periods should be tolled because (i) the mortgage defendants "fraudulently concealed" facts essential to his causes of action and (ii) he was incapacitated from the "shock from suddenly and inexplicably losing his home, income and family."

---

[12]The mortgage defendants also argue that Sykes's civil conspiracy claim against them is time-barred under RSA 508:4. Because the court has already determined that the amended complaint does not state a claim against the mortgage defendants for civil conspiracy, it will not address the statute of limitations argument for that claim.

1.   Claims Subject to RSA 508:4

     Under New Hampshire law, a personal action, other than for libel or slander, "may be brought only within 3 years of the act or omission complained of" or "within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of."  RSA 508:4,I.

     a.   Breach of contract

     Sykes alleges that the defendants breached the mortgage agreement by not providing him with the notice of default, notice of acceleration and notice of foreclosure sale as required under the mortgage agreement.  The mortgage defendants argue that the latest Sykes could have discovered the alleged breach was on October 2, 2009, the date of the foreclosure auction for which he was present.  The mortgage defendants contend that Sykes's breach of contract claim against them became time-barred on October 3, 2012, more than six months before he brought suit.

     "In a contract action, the relevant 'act or omission' is a party's alleged breach; thus, the statute of limitations begins to run when the alleged breach occurs, or when the plaintiff knew or reasonably should have known that a breach occurred." Berthiaume v. Ticor Ins. Servs., Inc., 2010 WL 3238318, at *2 (D.N.H. Aug. 13, 2010) (citing Coyle v. Battles, 147 N.H. 98, 100 (2001) & A & B Lumber Co., LLC v. Vrusho, 151 N.H. 754 (2005)). "Thus, the discovery rule exception does not apply unless the plaintiff did not discover, and could not reasonably have

19

discovered, either the alleged injury or its causal connection to the alleged negligent act."  <u>Perez v. Pike Indus., Inc.</u>, 153 N.H. 158, 160 (2005).

Sykes alleges that he was aware of the foreclosure auction on October 2, 2009, because he spoke to the auctioneer who informed him that the house was being sold and observed the auction.  <u>See</u> Compl. ¶¶ 47-50.  Therefore, Sykes knew or should have known by that date that the mortgage defendants had not provided him with the notices of default, acceleration, and foreclosure that were required by the mortgage agreement prior to the auction.

Sykes contends in his reply that although he was aware of the foreclosure auction on October 2, 2009, the relevant month for purposes of the statute of limitations is April of 2011, when he actually received the notices required under the mortgage agreement.  Even assuming that Sykes received the notices for the first time in April of 2011, however, that does not change the fact that Sykes knew or should have known about the alleged breach of the mortgage agreement on October 2, 2009, the date of the foreclosure auction.  In other words, because Sykes learned of the foreclosure on October 2, 2009, he should have known that he did not receive the notices required under paragraph twenty-two of the mortgage agreement by that date.  Accordingly, the limitations period for Sykes's breach of contract claim against the mortgage defendants expired in October of 2012, several months before he filed this lawsuit.

        b.   <u>Implied covenant of good faith and fair dealing</u>

Sykes alleges that the mortgage defendants breached the
implied covenant of good faith and fair dealing by failing to
provide him with the required notice, failing to respond to his
inquiries, and failing to offer loan modification until after the
foreclosure sale.  The mortgage defendants argue that all of the
alleged conduct underlying Sykes's claim occurred more than three
years before he asserted the claim and, therefore, the claim is
time-barred.

     The facts that Sykes alleges in support of his breach of the
implied covenant of good faith and fair dealing claim occurred on
or prior to the foreclosure auction, which took place on October
2, 2009.  Accordingly, the limitations period for Sykes's breach
of the implied covenant of good faith and fair dealing claim
against the mortgage defendants expired in October of 2012 before
he brought this lawsuit.


     2.   <u>Wrongful Foreclosure</u>

Sykes alleges that the mortgage defendants wrongfully
foreclosed on his home by failing to provide him with notice of
the foreclosure auction.[13]  The mortgage defendants argue that
the foreclosure auction occurred on October 2, 2009, and,
therefore, Sykes's wrongful foreclosure claim is time-barred.

_____

        [13]As discussed above, Sykes also alleged a claim for
wrongful foreclosure based on ineffective assignment.  The court
has already determined that the amended complaint fails to
sufficiently allege that claim.

RSA 479:25 provides: "No claim challenging the form of
notice, manner of giving notice, or the conduct of the
foreclosure sale shall be brought by the mortgagor of any record
lienholder after one year and one day from the date of the
recording of the foreclosure deed for such sale."  See RSA
479:25,II-a.  Sykes alleges the foreclosure sale took place on
October 2, 2009, and that he was aware of the sale on that date.
The foreclosure deed was recorded in the Rockingham County
Registry of Deeds on October 14, 2009.[14]  Therefore, the latest
Sykes could have brought his claim for wrongful foreclosure under
RSA 479:25 was October 15, 2010.  Accordingly, the limitation
period for Sykes's wrongful foreclosure clam against the mortgage
defendants expired before Sykes filed this lawsuit.

   3.   RESPA

Sykes alleges that the mortgage defendants violated RESPA by
failing to acknowledge receipt of, or otherwise respond to,
Sykes's inquiries concerning the additional $400 charge in
November and December of 2008, and January of 2009, each of which
he alleges were a qualified written request ("QWR") under the

---

   [14]The foreclosure deed is a public record.  See Kirtz v.
Wells Fargo Bank N.A., 2012 WL 5989705, at *5 n.1 (D. Mass. Nov.
29, 2012).  Therefore, the court may consider the foreclosure
deed when ruling on the motion for leave to amend.  See Rivera,
575 F.3d at 15 (when considering whether a complaint states a
claim upon which relief can be granted, a court may consider
"documents the authenticity of which [is] not disputed by the
parties; . . . official public records; . . . documents central
to plaintiffs' claim; or . . . documents sufficiently referred to
in the complaint.") (internal quotation marks omitted).

statute.  See 12 U.S.C. § 2605(e).  The mortgage defendants
contend that even assuming that Sykes alleged a claim for
violation of RESPA, the claim is time-barred under RESPA's three
year statute of limitations.

A QWR is a written correspondence from a borrower to the
servicer of a "federally related mortgage loan" that either seeks
information regarding the servicing of the loan or requests a
correction to the account and provides reasons for the borrower's
belief that the account is in error.  § 2605(e)(1).  During the
period relevant to Sykes's claim, RESPA required the servicer of
a federally-related mortgage loan to acknowledge receipt of a
borrower's QWR within twenty business days, see § 2605(e)(1)(A),
and to either correct the borrower's account or provide the
borrower with a "written explanation or clarification" within
sixty business days after receipt of the request, § 2605(e)(2).[15]
RESPA also requires any action pursuant to § 2605 to be brought
"within 3 years . . . from the date of the occurrence of the
violation . . . ."  12 U.S.C. § 2614.

Sykes alleges that he sent his final QWR in January of 2009.
The latest date that the mortgage defendants could have violated
RESPA based on Sykes's allegations, sixty business days after
they received that QWR, would have been sometime in March or

_____

[15]In July of 2010, after the events in this case, Congress
amended RESPA to shorten the time period under § 2605(e)(1)(A)
from twenty days to five days, and to shorten the time period
under § 2605(e)(2) from sixty days to thirty days.  See Dodd-
Frank Wall Street Reform and Consumer Protection Act, Pub. L. No.
111-203, § 1463(c) (2010) (Effective January 21, 2013.  See id. §
1400(c)).

23

April of 2009.  To be timely, Sykes would have had to bring his
RESPA claim no later than March or April of 2012.  Accordingly,
the limitation period applicable to Sykes's RESPA claim against
the mortgage defendants expired prior to the date he filed this
lawsuit.

    4.   <u>TILA</u>

    Sykes alleges that the mortgage defendants violated TILA by
failing to notify him when CCO assigned the mortgage to FNMA.
The mortgage defendants contend that the claim is barred by
TILA's one year statute of limitations.

    TILA provides that "no later than 30 days after the date on
which a mortgage loan is sold or otherwise transferred or
assigned to a third party, the creditor that is the new owner or
assignee of the debt shall notify the borrower in writing of such
transfer."  § 1641(g).  TILA also requires any action pursuant to
§ 1641 to be brought "within one year from the date of the
occurrence of the violation."  15 U.S.C. § 1640(e).  "Where . . .
the plaintiff's claim is based upon insufficient or nonexistent
disclosures, the limitations period begins running on the date
the disclosures should have been made."  <u>Galvin v. EMC Mortg.
Corp.</u>, 2013 WL 1386614, at *15 (D.N.H. Apr. 4, 2013).

    Sykes alleges that CCO assigned the mortgage to FNMA in July
of 2009.  Therefore, Sykes's TILA claim accrued in August of 2009

and became time-barred after August of 2010, several years prior
to this lawsuit.[16]

5.   Tolling

Sykes argues that even if his claims would otherwise be
time-barred, the statutes of limitations should be tolled because
(i) the mortgage defendants fraudulently concealed facts
essential to his causes of action and (ii) he was mentally
incompetent due to the shock of losing his home and the resulting
impact on his life and family.

a.   Fraudulent concealment

In New Hampshire, "'[t]he fraudulent concealment rule
states that when facts essential to the cause of action are
fraudulently concealed, the statute of limitations is tolled
until the plaintiff has discovered such facts or could have done
so in the exercise of reasonable diligence.'" Beane v. Dana S.
Beane & Co., P.C., 160 N.H. 708, 714 (2010) (quoting Bricker v.
Putnam, 128 N.H. 162, 165 (1986)).  Fraudulent concealment
"requires something affirmative in nature designed or intended to
prevent, and which does prevent, the discovery of facts giving
rise to a cause of action-some actual artifice to prevent
knowledge of the facts or some representation intended to exclude

---

[16]Sykes argues in his reply that he could not have
discovered until 2011 that FNMA was the assignee of the mortgage
and the foreclosing entity.  Even if the relevant date were April
of 2011, Sykes's TILA claim would be time-barred under the
statute's one year limitation period.

suspicion and prevent inquiry." <u>Lamprey v. Britton Const., Inc.</u>, 163 N.H. 252, 259-60 (2012) (internal quotation marks and citation omitted). The standard for fraudulent concealment for federal claims in the First Circuit is nearly identical. <u>See, e.g.</u>, <u>Rakes v. United States</u>, 442 F.3d 7, 26 (1st Cir. 2006) ("The rule governing fraudulent concealment is that 'the defendant raising the limitations defense must have engaged in fraud or deliberate concealment of material facts relating to his wrongdoing and the plaintiff must have failed to discover these facts within the normal limitations period despite his exercise of due diligence.'") (quoting <u>Torres Ramirez v. Bermudez Garcia</u>, 898 F.2d 224, 229 (1st Cir. 1990)).

Sykes argues in his reply to the mortgage defendants' objection that the mortgage defendants "fraudulently concealed the information necessary for [him] to bring his legal claims and committed fraud." He alleges that "[a]s a result of the fraudulent concealment, [he] did not discover the facts essential to the causes of action until April of 2011." Compl. ¶ 103.

Sykes's allegations do not support tolling the applicable statutes of limitations on the basis of fraudulent concealment. As discussed above, regardless of whether the mortgage defendants attempted to conceal facts from Sykes, he became aware or should have become aware of the facts essential to his causes of action against the mortgage defendants in 2009. Sykes was aware of the foreclosure, and, therefore, should have been aware that he did not receive notice of the foreclosure or the other required notices on October 2, 2009. Therefore, fraudulent concealment

does not toll his claims for breach of contract, wrongful foreclosure, or breach of the implied covenant of good faith and fair dealing against the mortgage defendants.

In addition, Sykes was aware or should have been aware that CCO failed to timely respond to his QWRs under RESPA in March or April of 2009, and that FNMA was assigned the mortgage by August of 2009.[17]   Therefore, fraudulent concealment does not toll Sykes's RESPA or TILA claim.

In other words, regardless of whether the mortgage defendants attempted to conceal certain facts from Sykes, he knew or should have known of the facts essential to his causes of action against the mortgage defendants in 2009.  Accordingly, Sykes's fraudulent concealment arguments are without merit.

### b.   Mental incompetence

Sykes alleges that as a result of the defendants' wrongful conduct, he suffered depression, anxiety, and post traumatic stress disorder.  He contends that after losing his home he was unable to assert his legal rights until recently and, therefore, the limitations periods applicable to his claims should be equitably tolled.

---

[17]Alternatively, even if Sykes is correct and the appropriate date of accrual for his TILA claim is April of 2011, his claim became time-barred after April of 2012.

i.   State law claims

RSA 508:8 provides that "[a]n infant or mentally incompetent person may bring a personal action within 2 years after such disability is removed."[18]   Sykes alleges in his amended complaint that the foreclosure and eviction "had a severe impact on [his] family relationship and on [his] mental health." Compl. ¶ 106.   Sykes also alleges that he sought medical help for his mental health issues in 2010, and argues that he was mentally incompetent for purposes of RSA 508:8.   Sykes implies in his reply that he regained competence less than two years prior to filing this lawsuit and, therefore, he complied with the limitations period of RSA 508:8.

The mortgage defendants did not address Sykes's allegations of mental incompetence.   It is not clear from Sykes's description of his mental state whether he meets the definition of "mentally incompetent person" under RSA 508:8.   The court cannot determine, for purposes of a futility analysis, whether the limitations periods applicable to Sykes's state law claims should be tolled because of his mental condition.   Cf. Patrisso v. Sch. Admin. Unit No. 59, 2010 WL 56023, at *2 (D.N.H. Jan. 5, 2010)

---

[18]Although Sykes labels his argument as to his mental incompetence as "equitable tolling," RSA 508:8, and not the doctrine of equitable tolling, governs the statute of limitations for New Hampshire state law claims when a plaintiff is mentally incompetent.   See Portsmouth Country Club v. Town of Greenland, 152 N.H. 617, 624 (2005) ("The doctrine of equitable tolling is applicable only where the prospective plaintiff did not have, and could not have had with due diligence, the information essential to bringing suit."); see also Kierstead v. State Farm Fire & Cas. Co., 160 N.H. 681, 688 (2010).

("Although a statute of limitations issue may sometimes be resolved through a Rule 12(b)(6) motion, a court can grant a motion to dismiss on limitations grounds only when the pleader's allegations leave no doubt that an asserted claim is time-barred.") (internal quotation marks and citations omitted); see also Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005).  Accordingly, the court cannot resolve the issue of whether Sykes's state law claims against the mortgage defendants are time-barred in the context of a futility analysis.

## ii.   Federal claims

"[T]he equitable tolling doctrine . . . 'provides that in exceptional circumstances, a statute of limitations may be extended for equitable reasons not acknowledged in the statute creating the limitations period.'"  Bead v. Holder, 703 F.3d 591, 594 (1st Cir. 2013) (quoting Nascimento v. Mukasey, 549 F.3d 12, 18 (1st Cir. 2008)).  The First Circuit "'appl[ies] equitable tolling on a case-by-case basis, avoiding mechanical rules and favoring flexibility.'"  Holmes v. Spencer, 685 F.3d 51, 62 (1st Cir. 2012) (quoting Ortega Candelaria v. Orthobiologics LLC, 661 F.3d 675, 680 (1st Cir. 2011)).[19]

---

[19]Although the First Circuit has not addressed whether equitable tolling applies to RESPA or TILA claims, the majority of jurisdictions considering the issue have held that it does. See, e.g., Gunn v. First Am. Fin. Corp., --- Fed. Appx. ---, 2013 WL 6068478, at *2 (3d Cir. Nov. 19, 2013) ("equitable tolling applies to RESPA claims"); Ramadan v. Chase Manhattan Corp., 156 F.3d 499, 505 (3d Cir. 1998) (TILA's statute of limitations "is

Under certain circumstances, "mental illness can equitably
toll a federal statute of limitations." Riva v. Ficco, 615 F.3d
35, 40 (1st Cir. 2010) (tolling the statute of limitations in the
Antiterrorism and Effective Death Penalty Act of 1996 because of
petitioner's mental illness); see also Nunnally v. MacCausland,
996 F.2d 1, 6-7 (1st Cir. 1993) (same for the Civil Service
Reform Act).  In the First Circuit, for equitable tolling on the
basis of mental incompetence to apply, a plaintiff must be unable
to pursue his legal rights or communicate with counsel because of
his mental incompetence.  See Riva, 615 F.3d at 40 (the question
for equitable tolling is whether the plaintiff "suffered from a
mental illness or impairment that so severely impaired his
ability either effectively to pursue legal relief to his own
behoof or, if represented, effectively to assist and communicate
with counsel"); Calderon-Garnier v. Rodriguez, 578 F.3d 33, 39
n.3 (1st Cir. 2009) (the appropriate question is "whether
plaintiff's mental condition rendered her incapable of rationally
cooperating with any counsel, and/or pursuing her claim on her
own during the limitations period") (internal quotation marks and
citation omitted); Nunnally, 996 F.2d at 6-7 (same); Melendez-
Arroyo v. Cutler-Hammer de P.R. Co., Inc., 273 F.3d 30, 37 (1st
Cir. 2001) (mental incapacity must be "so severe that [plaintiff]
was unable to engage in rational thought and deliberate decision

---

not jurisdictional and is therefore subject to equitable
tolling"); see also Galvin, 2013 WL 1386614, at *15 ("The court
will once again assume, without deciding, that equitable tolling
applies to TILA claims.").

making sufficient to pursue [his] claim alone or through
counsel") (internal quotation marks and citation omitted).

As with Sykes's state law claims, the court cannot determine
in this context whether tolling the limitations period for
Sykes's federal claims based on Sykes's alleged mental
incompetence is warranted.  See In re Comty. Bank of N. Va., 622
F.3d 275, 301-02 (3d Cir. 2010) ("[B]ecause the question whether
a particular party is eligible for equitable tolling generally
requires consideration of evidence beyond the pleadings, such
tolling is not generally amenable to resolution on a Rule
12(b)(6) motion.").  Therefore, the court cannot resolve the
issue of whether Sykes's RESPA or TILA claim is time-barred in
the context of a futility analysis.

6.   Summary of Statutes of Limitations Arguments

Accordingly, the court cannot determine in this context
whether the applicable statutes of limitations for Sykes's claims
for breach of contract, breach of the implied covenant of good
faith and fair dealing, wrongful foreclosure, RESPA, or TILA
should be tolled because of Sykes's alleged mental incompetence.
Whether Sykes has any evidentiary support for his contention that
he was mentally incompetent is a separate issue, one that is
better addressed in a motion for summary judgment.[20]

---

[20]Sykes has the burden of providing evidence of "'a
particularized description of how [his] condition adversely
affected [his] capacity to function generally or in relationship
to the pursuit of [his] rights.'"  Rios v. Mazzuca, 78 Fed. Appx.
742, 744 (2d Cir. 2005) (quoting Boos v. Runyon, 201 F.3d 178,

D.   Summary of Claims Against Mortgage Defendants

Accordingly, Sykes's amended complaint does not state claims against the mortgage defendants for wrongful eviction (Count III), civil conspiracy (Count VI), fraud (Count VII), or conversion (Count IX).  Sykes's claims against the mortgage defendants for breach of contract (Count I), violation of RESPA (count IV), violation of TILA (Count V), and breach of the implied covenant of good faith and fair dealing (Count VIII) are allowed.  Sykes's wrongful foreclosure claim (Count II) against the mortgage defendants is allowed to the extent it is based on allegations of deficient notice.  The amended complaint does not state a claim for wrongful foreclosure against the mortgage defendants based on an invalid assignment of the mortgage.

II.   Bank Defendants' Motion

The bank defendants object to Sykes's motion for leave to amend, arguing that amendment would be futile.  In support, they argue that Sykes's proposed claims for breach of contract, wrongful foreclosure, violation of RESPA, violation of TILA, and breach of the implied covenant of good faith and fair dealing are alleged against the mortgage defendants only.  They further argue that Sykes has not alleged facts to support his claims for fraud

185 (2d Cir. 2000)); see also Furbush v. McKittrick, 149 N.H. 426, 430 (2003) ("[T]he plaintiff has the burden of proving that an exception applies to toll the statute of limitations such that his . . . claim would be timely filed.").

or civil conspiracy against them, and that his claims for
wrongful eviction and conversion are time-barred.

In his reply, Sykes argues that he has sufficiently alleged
claims for fraud and civil conspiracy against the bank
defendants.  He also argues that none of his claims is time-
barred.

A.    Claims Not Alleged Against Bank Defendants

The bank defendants argue that Sykes's claims for breach of
contract (Count I), wrongful foreclosure (Count II), violation of
RESPA (Count IV), violation of TILA (Count V), and breach of the
implied covenant of good faith and fair dealing (Count VIII) are
all directed against the mortgage defendants only.  Sykes's reply
to the bank defendants' objection did not address the arguments
concerning those claims.

Sykes's claims for breach of contract, wrongful foreclosure,
violation of RESPA, violation of TILA, and breach of the implied
covenant of good faith and fair dealing allege wrongful conduct
by the mortgage defendants.  See id. ¶¶ 110-119, 120-134, 147-
165, 205-209.  None of these claims is directed against the bank
defendants and, accordingly, the amended complaint does not state
any of these claims against the bank defendants.

B.    Merits

The claims asserted against the bank defendants are for
fraud and civil conspiracy.  The bank defendants argue that
Sykes's amended complaint does not allege facts sufficient to

33

state a claim for fraud.  They also argue that because Sykes has
not alleged a claim for fraud, he has not alleged a claim for
civil conspiracy against them.  Sykes contends in his reply that
he has adequately pled both claims.

    1.  <u>Fraud</u>

Sykes's amended complaint alleges that Kelley, on behalf of
Bank of America, intentionally misrepresented that Bank of
America, and not BNYM, purchased his house at the foreclosure
auction, and did so "with the intent to force [Sykes] to vacate
his home."  Compl. ¶ 201.  Sykes also alleges that he
"detrimentally relied on those statements in that he
unsuccessfully tried to rent or repurchase the home[] from Bank
of America who, unbeknownst to [Sykes], was not the property
owner."  <u>Id.</u> ¶ 202.

The bank defendants argue that Sykes has not alleged
detrimental reliance.  They also argue Bank of America serviced
the loan and was the appropriate entity to negotiate with Sykes.

In his reply, Sykes contends that BNYM, and not Bank of
America, was the entity with which Sykes had to negotiate.  He
also contends that Kelley's "cash-for-keys" proposal set forth a
move out date that was earlier than the date on the eviction
notice he received from BNYM.  Sykes attaches the proposal and
the eviction notice as exhibits to his reply.

To prove fraud based on a misrepresentation, a plaintiff
must show that the defendant knowingly made a false
representation, intending the plaintiff to rely on it, and that

the plaintiff was injured by his justifiable reliance on the misrepresentation.  <u>Tessier v. Rockefeller</u>, 162 N.H. 324, 332 (2011).  Thus, to recover for fraud, a plaintiff must "reasonably rely [on a misrepresentation] to his detriment."  <u>Snow v. Am. Morgan Horse Ass'n, Inc.</u>, 141 N.H. 467, 468 (1996). Circumstances that support claims of fraud must be alleged with particularity.  <u>See</u> Fed. R. Civ. P. 9(b).

Sykes alleges that he relied on Bank of America's misrepresentation to his detriment because he tried to rent or repurchase his home from Bank of America, rather than BNYM.  But he does not allege that he had the right to rent or repurchase his home after the foreclosure sale, and he does not allege any facts to suggest that BNYM would have allowed him to do so.  Nor does he make any such arguments in his reply.  In other words, even if Bank of America made a material misrepresentation concerning ownership of Sykes's house after the foreclosure auction, and even if Sykes relied on that misrepresentation, he has not alleged particular facts to show that he was injured because of that reliance.[21]

---

[21]Sykes argues that the eviction notice from BNYM, which he attached as an exhibit to his reply, gave him until December 2, 2009, to vacate his home, which was later than the date provided in Kelley's "cash-for-keys" proposal.  Even if the court could consider the eviction notice for purposes of Sykes's leave to amend, it would not change the court's analysis.  Sykes did not allege in the amended complaint that Bank of America committed fraud by shutting off the utilities in the home prior to the date listed in the eviction notice.  In any event, Sykes does not explain the relevance of the date on the eviction notice as it pertains to Kelley's proposal.

In his reply, Sykes contends that he learned in 2012 that Kelley, in connection with a Real Estate Commission proceeding, produced a different version of the "cash-for-keys" proposal than he had given Sykes.  The revised version, which Sykes attached as an exhibit to his reply, had a later proposed move-out date. Sykes argues that if he had received the revised version, he would have accepted the proposal and his property would not have been destroyed because Kelley would not have turned off the utilities in the home.  Even if the court could consider the exhibits in this context, Sykes does not allege these facts in the amended complaint.  Therefore, the court does not consider that argument as to the sufficiency of Sykes's fraud claim.

Accordingly, the amended complaint does not state a claim for fraud against the bank defendants.[22]


2.   Civil Conspiracy

Sykes alleges that Bank of America engaged in a civil conspiracy to commit fraud as demonstrated by its misrepresentations that it owned Sykes's home after the foreclosure auction.  Sykes alleges that BNYM and Citibank engaged in a conspiracy by initiating the possessory action without giving Sykes notice, and by causing the Portsmouth District Court to issue the landlord-tenant writ to BNYM and the writ of possession to Citibank.

---

[22]Because the amended complaint does not state a claim for fraud against the bank defendants, the court does not address the bank defendants' contention that Bank of America was the servicer of the loan and had the power to negotiate with Sykes.

The bank defendants argue that because Sykes's fraud claim fails, so too does his civil conspiracy claim which is based on the same allegations.  Sykes's civil conspiracy claim against BNYM and Citibank, however, is not based on the same allegations as his fraud claim.  Sykes alleges that BNYM and Citibank agreed to initiate the possessory action and to hide from Sykes that the action was proceeding in order to conceal from him his legal rights.  Those allegations are different than those that were made in support of Sykes's fraud claim.  The bank defendants do not make any argument concerning the sufficiency of Sykes's allegations as to the possessory action.  Accordingly, the amended complaint states a civil conspiracy claim against BNYM and Citibank.

Sykes does not, however, state a civil conspiracy claim against Bank of America.  Sykes alleges that Bank of America misrepresented the owner of the mortgage after the foreclosure sale, but does not allege that Bank of America agreed with another entity to mislead Sykes.  Jay Edwards 130 N.H. at 47 (civil conspiracy requires "a combination of two or more persons by concerted action") (internal quotation marks and citation omitted).  Therefore, the amended complaint does not state a civil conspiracy claim against Bank of America.[23]

Accordingly, the amended complaint does not state a claim for fraud (Count VII) against the bank defendants or a claim for

---

[23]Sykes's civil conspiracy claim against Bank of America fails for the additional reason that, as with his claim for fraud against Bank of America, he does not allege "damages as a proximate result thereof."  Jay Edwards, 130 N.H. at 47.

civil conspiracy (Count VI) against Bank of America.  The amended complaint states a claim for civil conspiracy against BNYM and Citibank.

C.   Statute of Limitations

The bank defendants argue that Sykes's proposed claims for wrongful eviction (Count III) and conversion (Count IX) against them are time-barred under RSA 508:4.  In his reply to the bank defendants' objection, Sykes argues that the claims are not time-barred because he did not discover the facts essential to his causes of action until April of 2011 and that, even if his claims would otherwise be time-barred, the limitations periods should be tolled because of the bank defendants' fraudulent concealment and Sykes's mental incompetence.

1.   Wrongful Eviction

Sykes alleges that he became a tenant at sufferance after the foreclosure auction, and that landlords are prohibited from using "self help" to evict tenants at sufferance.  Sykes argues that when Kelley shut off of the utilities in the house, he was constructively evicted and that as a result of the eviction he did not receive notice of the possessory action.  The bank defendants argue that Sykes's claim for wrongful eviction is time-barred under 508:4 because he was evicted more than three years prior to bringing this suit.[24]

_____

[24]The court is not aware of any New Hampshire cases addressing whether a claim for wrongful eviction is subject to

Sykes alleges that the defendants "taped an undated eviction notice to [his] home[] door" on November 2, 2009.  Compl. ¶ 61. He further alleges that Kelley shut off the utilities in the home in November and that he "vacated the home[] on November 25, 2009."  Id. ¶ 67; see id. ¶ 64.  Therefore, Sykes alleges that he was evicted no later than November 25, 2009.  See id. ¶¶ 135-140.

To be timely under RSA 508:4, a claim for wrongful eviction would have to have been filed by, at latest, November 25, 2012.[25] Accordingly, because Sykes did not file this lawsuit until May of 2013, the claim is time-barred under the statute.

### 2.  Conversion

Sykes alleges that the bank defendants and Citibank prevented him from retrieving his personal property from the home and destroyed the property.  He alleges that their action "constituted conversion because it was intentional exercise over [his] property in a way which interfered with [his] right to control of said property."  Compl. ¶ 214.  The bank defendants argue that Sykes's property was allegedly destroyed in November of 2009, more than three years prior to bringing this lawsuit.

---

RSA 508:4's three year limitations period.  Because Sykes does not argue that RSA 508:4 is inapplicable to a claim for wrongful eviction, the court will assume that the limitations period in the statute applies to that claim.

[25]Sykes also alleges that BNYM and Citibank "deprived [him] of the opportunity to challenge the wrongful eviction because he was never notified of the suit in Portsmouth District Court." Compl. ¶¶ 144, 145.  These allegations do not change Sykes's alleged eviction date of November 25, 2009.

Sykes alleges that his property was destroyed in November of
2009.  To be timely under RSA 508:4, Sykes's claim for conversion
would have to have been filed by, at latest, November of 2012.
Accordingly, because Sykes did not file this lawsuit until May of
2013, the claim is time-barred under the statute.

    3.  <u>Tolling</u>

Sykes argues that even if his claims would otherwise be
time-barred, the statute of limitations should be tolled because
(i) the bank defendants fraudulently concealed facts essential to
his causes of action and (ii) he was mentally incompetent due to
the shock of losing his home and the resulting impact on his life
and family.

As with Sykes's claims against the mortgage defendants, his
allegations against the bank defendants do not support tolling
the statute of limitations on the basis of fraudulent
concealment.  Regardless of whether the bank defendants attempted
to conceal certain facts from Sykes, he knew or should have known
of the facts essential to his causes of action for wrongful
eviction and conversion in 2009, when he vacated the home and his
property was destroyed.  Accordingly, Sykes's fraudulent
concealment arguments are without merit.

For the reasons stated above, however, the court cannot
determine, for purposes of a futility analysis, whether the
limitations periods applicable to Sykes's claims for wrongful
eviction and conversion should be tolled because of his mental
condition.  Accordingly, the court cannot resolve the issue of

whether Sykes's claims for wrongful eviction and conversion against the bank defendants are time-barred in the context of a futility analysis.

D.   Summary

Accordingly, the amended complaint does not state a claim against the bank defendants for breach of contract (Count I), wrongful foreclosure (Count II), violation of RESPA (Count IV), violation of TILA (Count V), fraud (Count VII), or breach of the implied covenant of good faith and fair dealing (Count VIII). Sykes's claims for wrongful eviction (Count III) and conversion (Count IX) are allowed. Sykes's civil conspiracy claim (Count VI) against BNYM and Citibank is allowed. The amended complaint does not state a claim for civil conspiracy against Bank of America.

Conclusion

For the foregoing reasons, Sykes's motion for leave to file an amended complaint (document no. 26) is granted. Sykes's motions for leave to file replies to the defendants' objections (document nos. 34 & 35) are granted. The defendants' motions to dismiss the original complaint (document nos. 8 & 15) are terminated as moot.

Sykes shall file his replies **on or before March 11, 2014,** and shall file the amended complaint as allowed in this order **on or before March 28, 2014.** The following claims are allowed: breach of contract (Count I) against the mortgage defendants;

41

wrongful foreclosure (Count II) based on deficient notice against the mortgage defendants; wrongful eviction (Count III) against the bank defendants; RESPA (Count IV) against the mortgage defendants; TILA (Count V) against the mortgage defendants; civil conspiracy (Count VI) against BNYM and Citibank; breach of the implied covenant of good faith and fair dealing (Count VIII) against the mortgage defendants; and conversion (Count IX) against the bank defendants and Citibank.

        SO ORDERED.

                                        _____
                                        Joseph A. DiClerico, Jr.
                                        United States District Judge

March 4, 2014

cc:  Gary M. Burt, Esq.
     Kristina Cerniauskaite, Esq.
     Terry L. Harman, Esq.
     Andrea Lasker, Esq.
     Thomas J. Pappas, Esq.