UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


Lewis B. Sykes, Jr.

   v.                                        Civil No. 13-cv-334-JD
                                              Opinion No. 2015 DNH 213

RBS Citizens, N.A.,
Bank of America, N.A.,
Bank of New York Mellon,
CCO Mortgage Corporation,
Federal National Mortgage Association,
Citibank N.A.[1]


O R D E R


Lewis B. Sykes, Jr. is proceeding pro se against certain banks and mortgage providers, alleging claims that arose from the defendants' involvement in the circumstances surrounding the foreclosure sale of Sykes's home in 2009.  Since April 21, 2015, the case has proceeded under an interim discovery plan to address the issue of whether the applicable statutes of limitations were equitably tolled due to Sykes's alleged mental incompetence.  Sykes and the defendants have now moved for summary judgment on the tolling issue.[2]

---

[1] Default was entered as to Citibank on January 6, 2014.

[2] Although the docket entry for the motion indicates that a hearing on the motion is requested, the defendants failed to request a hearing in their motion.  Hearings are the exception rather than the rule.  LR 7.1(d).  In the absence of a written request and an explanation of the need for a hearing, no hearing was held on the motion.  See id.

Standard of Review

Cross motions for summary judgment proceed under the usual standard, although each motion is evaluated separately to determine whether it meets the requirements of Federal Rule of Civil Procedure 56.  Ins. Co. of Pa. v. Great N. Ins. Co., 787 F.3d 632, 635 (1st Cir. 2015).

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A genuine dispute is one that a reasonable fact-finder could resolve in favor of either party and a material fact is one that could affect the outcome of the case." Flood v. Bank of Am. Corp., 780 F.3d 1, 7 (1st Cir. 2015).  Reasonable inferences are taken in the light most favorable to the nonmoving party, but unsupported speculation and evidence that "is less than significantly probative" are not sufficient to avoid summary judgment.  Planadeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 174 (1st Cir. 2015) (internal quotation marks omitted).

Background

Sykes and his mother bought a house in Portsmouth, New Hampshire, in 2005.  The purchase was made with a loan and mortgage on the property.  In 2008, Sykes stopped making

2

mortgage payments because his mortgage statements showed an extra charge of $400.  Sykes understood that not making the mortgage payments constituted default on the mortgage.

After Sykes communicated with representatives of several of the defendants, a foreclosure sale of the property was held by auction on October 2, 2009.  Sykes was present at the property during the auction.  During the sale, Sykes talked to the auctioneer and called the law office that was handling the foreclosure.

Soon after the sale, Sykes contacted Attorney David Brown, who had represented him previously, about the foreclosure sale. They met at Attorney Brown's office and discussed the foreclosure sale.  Brown, with Sykes's permission, contacted the law firm that handled the foreclosure sale.  Sykes signed a letter of representation, and Brown obtained information about the foreclosure from the law firm.

Brown told Sykes that Bank of America owned the property, and Brown also contacted Bank of America.  Sykes wanted Brown to get the property back for him.  At the end of October, Sykes worked with Attorney Judy Goodnow who contacted Robert Kelly of New England Coastal Realty, Inc. and also communicated with the law firm that handled the foreclosure sale.  Kelly offered Sykes a "cash-for-keys deal" that Sykes decided not to accept.

Sykes continued to live at the property after the
foreclosure sale.  On November 2, 2009, Sykes saw an eviction
notice being taped to the door of the property and talked to the
person who delivered the notice.  Sykes also contacted Kelly
about the eviction notice.

Because of the eviction notice, Sykes began to look for
other housing and toured rental properties with a real estate
agent.  He contacted a moving company and arranged to move his
belongings to a rental property in Seabrook, New Hampshire.  He
moved out of the foreclosed property on November 25, 2009, and
filed a change of address with the post office.  Although the
property in Seabrook did not have space for Sykes's furniture
refinishing business, he otherwise went about the ordinary
activities of daily living.

In late spring of 2010, Sykes looked for another rental
property and moved to Hampton, New Hampshire.  This property had
a workshop that allowed Sykes to pursue his furniture
refinishing business.  Sykes also carried on the normal
activities of daily living.  Sykes stayed at the rented home in
Hampton through at least June of 2015.

In 2011, Sykes filed complaints about the foreclosure sale
with Senator Kelly Ayotte and the Office of the New Hampshire
Attorney General without the assistance of an attorney.  Sykes
spoke to lawyers about his case without success.  From December

4

of 2011 through January of 2013, Sykes was represented by
Attorney Thomas Neal for purposes of a complaint to the New
Hampshire Real Estate Commission about realtors who were
involved in the foreclosure process.  Sykes then was represented
by lawyers with the Harman Law Offices, who filed this suit on
his behalf.

Sykes brought suit in state court against RBS Citizens,
N.A.; Bank of America, N.A.; Bank of New York Mellon; CCO
Mortgage Corporation; Federal National Mortgage Association; and
Citibank, N.A. with a complaint dated May 24, 2013.  The
defendants removed the case to this court in July of 2013.
Sykes sought leave to amend his complaint in January of 2014,
and the defendants objected, arguing in part that the claims
were barred by the statutes of limitations.[3]  In response to the
statute of limitations issue, Sykes argued that the limitations
period was tolled by his mental incapacity due to the shock of
foreclosure and eviction.

The court held that the claims alleged in the amended
complaint were barred by the applicable statutes of limitations
unless the limitations periods were tolled.  See Order, document
no. 37, March 4, 2014, at 18-25.  The court also held that the
limitations periods were not tolled by fraudulent concealment.

---

[3] As is noted above, default was entered as to Citibank on
January 6, 2014.

5

Id. at 25.  On the issue of tolling due to mental incompetence,
however, the court ruled that the record was insufficient to
determine whether the limitations periods were tolled by Sykes's
mental incompetence and that the issue should be addressed in
motions for summary judgment.  Id. at 31.

The third amended complaint was docketed on September 9,
2014, document no. 62.  That is the operative complaint in this
case.  Counsel who represented Sykes withdrew from the case on
December 12, 2014.  Sykes proceeded pro se after the withdrawal
of his counsel.

Since April 21, 2015, the case has been limited to the
issue of whether the applicable statutes of limitations were
tolled due to Sykes's mental incompetence.  See Order, document
no. 100, April 21, 2015.  For that purpose, the court
established an interim discovery plan that provided deadlines
for discovery and motions for summary judgment on the tolling
issue.  The parties have now filed their motions and objections.

## Discussion

Sykes moves for summary judgment, asking that the statutes
of limitations be tolled to allow his claims.  The defendants
object to Sykes's motion and move for summary judgment in their
favor, asserting that tolling does not apply because Sykes was

not mentally incompetent during any period applicable to the claims in this case.[4]  Sykes objects to the defendants' motions.

Sykes alleges state and federal claims.  All of the claims are based on events that occurred between November of 2008 and January of 2010.  The state claims are governed by RSA 508:4, which provides a three-year limitations period.  The federal claims are brought under the Real Estate Settlement Procedures Act ("RESPA"), which has a three-year limitations period, and the Truth in Lending Act ("TILA"), which has a one-year limitations period.  As determined in the March 4, 2014, order, because this suit was initiated in May of 2013, all of the claims are time-barred unless the limitations periods were tolled because of Sykes's mental incompetence.  See Order, document no. 37, March 4, 2014, at 18-25.

The statute of limitations for the state claims, RSA 508:4, would be tolled pursuant to RSA 508:8 for any period, after Sykes's state claims accrued, during which Sykes was mentally incompetent.  The limitations periods for the federal claims would be equitably tolled during mental incompetence.  Sykes bears the heavy burden of showing that he was mentally

---

[4] The defendants moving for summary judgment are RBS Citizens, N.A.; Bank of America, N.A.; Bank of New York Mellon; CCO Mortgage Corporation; Federal National Mortgage Association; and New England Coastal Realty, Inc.  Default was entered against Citibank, N.A. on January 6, 2014, and Citibank has not participated in the case.

incompetent within the meaning of each tolling provision.  See
Vazquez-Rivera v. Figueroa, 759 F.3d 44, 50 (1st Cir. 2014);
Furbush v. McKittrick, 149 N.H. 426, 430 (2003).


A.  Standard for Tolling

     The federal standard for equitable tolling due to mental
incompetence requires proof that the plaintiff's "mental
disability was so severe that the plaintiff was unable to engage
in rational thought and deliberate decision making sufficient to
pursue his claim alone or through counsel."  Vazquez-Rivera, 759
F.3d at 50.  The New Hampshire Supreme Court has not provided a
standard of mental incompetence under RSA 508:8.  Sykes does not
cite a standard of mental incompetence necessary to toll his
state claims under RSA 508:8.[5]

     When the state's highest court has not addressed an issue,
a federal court must "make an informed prophecy as to how that
court would rule if faced with the issue."  In re Montreal,
Maine & Atlantic Ry., Ltd., 799 F.3d 1, 10 (1st Cir. 2015).  In

---

     [5] Sykes states that "the 'Diagnostic and Statistical Manual of
Mental Disorders (DSM-5)' applies to situations in which
symptoms characteristic of trauma cause clinically significant
distress or impairment in social, occupational or other
important areas of functioning."  That statement apparently
refers to the diagnosis provided by Dr. Eric G. Mart in his
report.  Neither the diagnosis nor the Manual provides a
standard for purposes of RSA 508:8 or for equitable tolling
under federal law.

predicting the course of state law, a federal court should consider, among other things, analogous decisions of the state's highest court, other decisions in the state, and decisions on the issue in other jurisdictions. Butler v. Balolia, 736 F.3d 609, 613 (1st Cir. 2013).

The defendants rely on the New Hampshire standards for mental incompetence in the contexts of guardianship and testamentary capacity. While those standards may be analogous to mental incompetence for purposes of RSA 508:8, on a more specific level, they address different issues of functionality.

New Hampshire law pertaining to the statute of limitations focuses on the plaintiff's ability to comprehend that a cause of action exists. A cause of action does not accrue until "the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of." RSA 508:4, I; see also Murray v. McNamara, 167 N.H. 474, 479 (2015). In the context of tolling the limitations period for fraudulent concealment, the New Hampshire Supreme Court held that tolling did not apply unless the fraudulent actions prevented the plaintiff from discovering facts that would give rise to the cause of action. Ingram v. Drouin, 167 N.H. 417, 422 (2015).

In the neighboring state of Massachusetts, the Supreme Judicial Court has defined "incapacitated by reason of mental

9

illness" for purposes of the tolling statute to mean that the plaintiff has "the type of condition that precludes [him] from 'understanding the nature or effects of his acts and thus prevents him from comprehending his legal rights.'" Gauthier v. United States, 2011 WL 3902770, at *4 (D. Mass. Sept. 2, 2011) (quoting McGuinness v. Cotter, 591 N.E. 2d 659, 664 n.9 (Mass. 1992)). In Maine, mental illness as used in the tolling statute is defined to mean "'an overall inability to function in society that prevents plaintiffs from protecting their legal rights.'" Douglas v. York County, 433 F.3d 143, 150 (1st Cir. 2005) (quoting McAfee v. Cole, 637 A.2d 463, 466 (Me. 1994)). In Vermont, the limitations period is tolled while the plaintiff is insane, meaning "that the person's mental state makes him unable to manage his business affairs or estate, or to comprehend his legal rights and liabilities." Eaton v. Prior, 58 A.3d 200, 205 (Vt. 2012) (internal quotation marks omitted).

The federal tolling standard was developed from state-law competency principles. See Nunes v. Brown Univ., 2015 WL 5167846, at *5 (D.R.I. Sept. 3, 2015). The federal standard, which requires that the plaintiff be "unable to engage in rational thought and deliberate decision making sufficient to pursue his claim alone or through counsel," Vazquez-Rivera, 759 F.3d at 50, focuses on the plaintiff's ability to comprehend and pursue his legal claims, which is like the New Hampshire law on

10

the statute of limitations and the statutory interpretation in Massachusetts, Maine, and Vermont.  The court will apply the federal tolling standard as a prediction of the standard the New Hampshire Supreme Court would follow.

Therefore, the applicable standard for the state and federal claims is whether Sykes was unable to engage in rational thought and deliberate decision making sufficient to pursue his claims alone or through counsel.

B.  Sykes's Motion for Summary Judgment

In support of his motion for summary judgment, Sykes does not claim a specific period of mental incompetence.  Instead, he asks the court to toll the limitations periods "to an appropriate date so as to include the activities occurring and the documentation produced with 'no genuine issue as to any material fact' during the period from the Plaintiff's CCO Mortgage Corporation statement dated November 16, 2008 to May 24, 2010."

To the extent Sykes asks the court to establish the dates of his disability without providing evidence or argument to support such a finding, he has not carried his burden of proof, and his motion fails.[6]  On the other hand, Sykes may have

-----

[6] Sykes was aware that he bore the burden of proof on the issue of mental incompetence for purposes of tolling the statute of limitations.  The court informed him of that burden in the

11

intended to argue that the limitations periods should be tolled from November 16, 2008, to May 24, 2010, due to his mental incompetence.

1.  Tolling Period

Even if Sykes were able to prove mental incompetence during the period between November 16, 2008, and May 24, 2010, all but one of his claims would still be time barred.  For purposes of Sykes's state law claims, he would have had two years from May 24, 2010, to file suit, making the deadline May 23, 2012.  RSA 508:8.  Because Sykes did not file suit until May 24, 2013, the state law claims are time barred even if tolling under RSA 508:8 applied here.

The TILA claim had a one year limitations period.  See 15 U.S.C. § 1640(e).  Therefore, the time to file that claim also expired before Sykes brought suit.

The RESPA claim had a three-year limitations period.  12 U.S.C. § 2614.  If equitable tolling applies to RESPA and if the entire three-year period were allowed after tolling, the RESPA claim would be timely if Sykes could show that he was mentally incompetent during the time he claims.

---

March 4, 2015, order, and Sykes acknowledged in his memorandum in support of summary judgment that he bore that burden.

2.  <u>Mental Incompetence</u>

Sykes, however, provides no evidence in support of his motion for summary judgment to show that he was mentally incompetent at any time before suit was filed.  Sykes argues that his sessions with V. Stephen Piro, a licensed clinical social worker, and the diagnosis provided by Dr. Eric Mart show that he was mentally incompetent.  Piro is not an expert witness in this case and has provided no report to support Sykes's motion.  Although Sykes did not submit the report in support of his motion, Dr. Mart did provide an expert report for Sykes.[7]

Sykes argues that because Dr. Mart diagnosed him in October of 2014 with "Other Specified Trauma-and Stressor-Related Disorder (DSM-5/309.89) and Obsessive Personality Disorder," he was mentally incompetent for purposes of the state and federal standards from November 16, 2008, to May 24, 2010.  On its face, a diagnosis in October of 2014 does not apply to Sykes's condition years prior to the diagnosis.  Further, a diagnosis of mental illness alone does not establish mental incompetence for purposes of tolling.  Vazquez-Rivera, 759 F.3d at 50.

In the summary and conclusion to his report, Dr. Mart provided the diagnosis that Sykes recites.  Dr. Mart also stated that Sykes "has a long-standing obsessional personality pattern"

---

[7] The defendants later submitted Dr. Mart's report in support of their motion for summary judgment.

which may be advantageous in many professions but may cause
problems when the person is in conflict with authority, must
deal with unstructured situations, or is in intimate
relationships.  In distressing situations, Dr. Mart wrote, an
obsessional personality pattern causes the person to be
preoccupied with details, rules, and lists to the extent that
the person loses focus on the point of an activity."

Dr. Mart stated that Sykes lost focus due to his
obsessional personality pattern which "greatly contributed to
his inability to find effective counsel and take appropriate
steps" within the limitations periods.  Dr. Mart further stated
that as Sykes's situation worsened, he developed trauma-related
symptoms.  In conclusion, Dr. Mart stated that Sykes "was unable
to take the appropriate steps necessary to have his case heard
in an appropriate venue due to a combination of his obsessive
personality disorder and trauma symptoms."

At his deposition, however, Dr. Mart testified that from
the time of the foreclosure sale, in October of 2009, Sykes knew
that he needed "legal recourse" and knew that there were lawyers
and courts for the purpose of contesting the sale.  Dr. Mart
also testified that Sykes was mentally competent when he
examined him in September of 2014 and had always been mentally
competent.  Therefore, Dr. Mart's opinion, as stated in his

14

report, was substantially modified by his deposition testimony and does not show that Sykes was mentally incompetent.

The record also demonstrates Sykes's competence after the foreclosure sale and the years following the sale. Sykes contacted counsel almost immediately after the foreclosure sale and pursued action through counsel for a month. He took action to challenge the eviction notice in November of 2009 and was able to consider and reject the "cash for keys" options offered to him by Kelley. He was able to look for and find new housing and to move twice during 2010. After he moved to Hampton in mid 2010, he resumed his furniture refinishing business. In early 2011, he brought complaints about the foreclosure sale to Senator Ayotte's office and the New Hampshire Attorney General's office. Therefore, the record demonstrates that Sykes was able to engage in rational thought and deliberate decision making sufficient to pursue his claims alone or through counsel.

Sykes has not shown that the statutes of limitation for his claims, alleged in the third amended complaint, document no. 62), have been tolled by RSA 508:8 or under federal equitable tolling at any time.[8]

---

[8] To the extent Sykes argues that he might have claims based on more recent occurrences and events, those matters are not properly raised in a motion for summary judgment and will not be considered here.

C.  <u>The Defendants' Motions for Summary Judgment</u>

The defendants move for summary judgment on all of the
claims on the grounds that they are barred by the statutes of
limitations and that Sykes cannot show that RSA 508:8 or federal
equitable tolling applies.  In response, Sykes lists a myriad of
events that he alleges occurred after May 24, 2010, and asserts
that the statutes of limitations do not apply to those matters.
He also challenges the defendants' facts without citation to
record evidence, and notes Dr. Mart's diagnosis.

The claims at issue here are those alleged in the third
amended complaint, document no. 62.  Sykes's accusations and
allegations in his objections to summary judgment do not add
claims or provide cognizable opposition to the motions for
summary judgment.

To properly oppose the defendants' facts that are supported
by record citations, Sykes was required to "incorporate a short
and concise statement of material facts, supported by
appropriate record citations, as to which [he] contends a
genuine dispute exists."  LR 56.1(b).  All properly supported
material facts set forth in [the defendants'] factual statement
may be deemed admitted unless properly opposed by [Sykes]." <u>Id.</u>

In his opposition to the defendants' facts, Sykes argued
that the evidentiary support the defendants provided for the
motions for summary judgment was not complete or accurate.  He

also accused defendants' counsel of misconduct.  Sykes, however, did not provide his own record or cite to record documents to properly oppose the defendants' facts.[9]  Therefore, the defendants' facts are deemed to be admitted.

As is explained in addressing Sykes's motion for summary judgment, the record shows that he was mentally competent for purposes of RSA 508:8 and federal equitable tolling between October of 2009 and the time suit was filed in May of 2013.  The statutes of limitations applicable to Sykes's claims were not tolled, and all of the claims are time barred.

Therefore, the defendants are entitled to summary judgment on all of the claims alleged against them.

## Conclusion

For the foregoing reasons, the plaintiff's motion for summary judgment (document no. 152) is denied.  The defendants' motions for summary judgment (documents nos. 153 and 154) are granted.  All claims against RBS Citizens, N.A.; Bank of America, N.A.; Bank of New York Mellon; CCO Mortgage

---

[9] The defendants provided a separate factual statement in support of their motion for summary judgment.  Cf. LR 56.1(a) (requiring memorandum in support of summary judgment to "incorporate a short and concise statement of materials facts").  In response, Sykes filed a separate opposition to the defendants' factual statement.

Corporation; Federal National Mortgage Association; and New England Coastal Realty are dismissed.

Default was entered as to Citibank, N.A. on January 6, 2014.  The deadline for a motion for default judgment is **December 18, 2015**.  Failure to move for default judgment within the time allowed may result in dismissal of Sykes's claims against Citibank, N.A.

SO ORDERED.

Joseph DiClerico, Jr.
United States District Judge

November 20, 2015

cc:  Elizabeth J. Ireland, Esq.
     Andrea Lasker, Esq.
     Robert E. Murphy, Jr., Esq.
     Thomas J. Pappas, Esq.
     Elizabeth T. Timkovich, Esq.
     Citibank, N.A.